IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MARSA HALL,                        §
    TDCJ-CID NO.540183,            §
        Plaintiff,             §
v.                                 §   CIVIL ACTION NO. H-10-4765
                                   §
FRANK HOKE, *et al.*,              §
        Defendants.            §

## MEMORANDUM AND ORDER ON DISMISSAL

On November 19, 2010, plaintiff Marsa Hall, a state inmate proceeding *pro se* and *in forma pauperis*, has filed this complaint pursuant to 42 U.S.C. § 1983 alleging that he has been denied access to the courts. (Docket Entry No.1). For the reasons to follow, the Court will dismiss his complaint because it is legally frivolous.

## BACKGROUND AND CLAIMS

Plaintiff complains that because of the prison policy ATC-050, which permits unit law libraries to enforce a "no talking without permission" rule ("the Rule"), he was unable to confer with another inmate about the procedural requirements for filing a civil rights suit in state court; consequently, his state court suit was dismissed on procedural grounds. (Docket Entry No.1, page 4). Plaintiff contends that Wynne Unit Assistant Warden Kelley Strong and Librarian Robert Quada implemented the Rule via an inter-office communication on May 20, 2008, in response to an alleged escape attempt. (Docket Entries No.1-1, pages 8-9, 15; No.1-3, page 3). Although the stated purpose of the Rule is to prohibit some

offenders from disrupting other inmates in the law library, plaintiff contends that Librarian Quada has used it to "crack-down" on all inmates utilizing the law library. (Id., pages 15-16). Plaintiff complains that the prison policy blocks his ability to access the courts because it does not provide for trained paralegals to assist inmates with legal filings[1] and it prohibits inmates from conferring with, or seeking legal advice from, willing inmates. (Id., page 9). Plaintiff claims before the implementation of the Rule, inmates who had signed in for a library session could consult about legal matters with any inmate willing to assist him. (Id.).

Plaintiff acknowledges that Warden Strong and Librarian Quada have adopted a procedure whereby an inmate may confer with another about legal issues during the same library session. (Id., page 17). To facilitate a same-session legal visit, an inmate must submit a request for the same, which must be approved by Quada and the Warden. (Id., pages 17-18). An approval make take a week or more. (Id., page 18). If approved, the two inmates may confer for one hour of a two-hour session. (Id.).

Plaintiff alleges the following events gave rise to the pending complaint:   In two sets of grievances filed in July and

---

[1] Plaintiff also complains that the new computer terminal for legal research has limited his research time and ability to stay current with the law. (Docket Entry No.13, pages 12-13). He further complains that the Rule also prohibits restroom breaks, Saturday sessions, more than four inches of legal materials, and legal folders. (Id., page 16).

August 2008, plaintiff complained that he had not been given personal protective equipment, access to safety data, or allowed to shower immediately after completion of his job as a janitor.[2] (Docket Entries No.13-3, No.13-4). In a response to Step 2 Grievance No.2008196867, dated October 27, 2008, Warden Tony O'Hare found merit to plaintiff's claim and indicated that a Unit Risk Manager would take appropriate action. (Docket Entry No.13-3, page 11). That very day, plaintiff's job assignment was changed to the field squad. (Docket Entry No.13-4, page 8). In November and December 2008, plaintiff grieved the change in job assignment without success.[3]

---

2 On July 9, 2008, plaintiff filed Step 1 Grievance No.2008177694, in which he requested personal protective equipment, authorization to shower immediately after completion of his work assignment, and access to material safety data sheets related to his job assignment as a janitor. (Docket Entry No.13-3, page 4). Warden O'Hare responded that the data sheets were available upon request at the chemical room and that none of the chemicals used by janitors required an immediate shower upon completion of job assignment. (Id., page 5). Plaintiff filed a Step 2 grievance, complaining that his janitor job required that he be issued specific safety equipment but his supervisors had failed to provide them. (Id., page 2). His grievances were denied and plaintiff was referred to the Unit Risk Manager. (Id., page 3).

On August 9, 2008, plaintiff filed Step I Grievance No.2008196867, in which he complained that he could not perform his janitor job because he had not had any safety training in over a year and therefore, did not have the proper knowledge to perform his duties using safety equipment and chemicals as required by OSHA. (Id., page 10).

3 On November 9, 2008, plaintiff submitted Step 1 Grievance No.2009042055, wherein he complained that his job was changed from janitor to field squad, which he saw as a punitive assignment, in retaliation for plaintiff filing the two aforementioned grievances. (Docket Entry No.13-3, page 15). Warden Pierce responded that "offender jobs may be changed anytime for security reasons, concerns and/or staffing needs." (Id., page 16). He found no evidence of retaliation and no medical restrictions that would prevent plaintiff from working in the field squad. (Id.). Plaintiff's Step 2 Grievance was denied by Grievance Investigator Kevin Mayfield. (Id., page 14).

In December 2008, plaintiff requested a lay-in to discuss his medical condition and job assignment. (Docket Entry No.13-4, page 11). Plaintiff learned that his medical restrictions had been removed by Dr. Julye. (Docket Entry No.13-2, page

In 2009, plaintiff began to work on a civil rights lawsuit, which he intended to file in state court with respect to the change in job assignment.   In March 2009, plaintiff requested permission to discuss the civil rights suit with inmate Darnell Smith during a library session.   (Docket Entry No.13, page 14).   Plaintiff did not submit a request to confer with Smith as required by the "no talking without permission rule"; consequently, Officer Brown denied plaintiff's request.   (Id., page 15).   Thereafter, plaintiff and Smith smuggled legal notes to each other; they were caught by Officer Brown, who warned them about forfeiture and the law library rules.[4]   (Id.).

On March 11, 2009, plaintiff filed Hall v. Bell, No.24,621 (278th Dist. Ct., Walker County, Tex., July 16, 2009), in which he alleged that former Senior Warden Charles C. Bell, Assistant Warden Tony R. O'Hare, Grievance Investigator Kevin Mayfield, and John Doe assigned him to field work in violation of his medical restrictions and in retaliation for filing grievances regarding safety measures.

---

7).

[4] Offender Darnell Smith declares in an unsworn declaration that on March 3, 2009, plaintiff briefly discussed his plans to go forward with the civil suit in state court.   (Docket Entry No.13-8, page 16).   On March 8, 2009, during a regular law library session, plaintiff smuggled Smith a note seeking information on whether he had complied with the procedural requirements for filing suit.   (Id.).   Smith attempted to smuggle a note back with the information but his efforts were detected by library staff who threatened to terminate the session if they were caught again.   (Id.).   During a restroom break, they were caught by security and threatened with a disciplinary case.   (Id.).   Two to three weeks later, they were caught passing notes and threatened with expunction.   (Id., page 17).   Plaintiff was concerned because the state district court had returned his lawsuit unfiled for failure to include a trust fund account statement.   (Id.).   When Smith next saw plaintiff, the case had been dismissed.   (Id.).

(Docket Entries No.1, page 2; No.13-2, pages 1-19).  Plaintiff did not attach to his original complaint in the state civil suit an affidavit showing his litigation history and an affidavit showing the dates that he had exhausted his prison grievances, as required by state law.  (Docket Entry No.13, page 20).

The Office of the Attorney General for the State of Texas filed an untimely answer to the state civil suit and moved to dismiss it on procedural grounds.  (Docket Entry No.1, page 5).  Consequently, on July 16, 2009, the state district court granted the motion to dismiss and dismissed the state civil suit without prejudice.  (Id., pages 5, 7).  Plaintiff was informed that he could not file another suit in the courts of Walker County until he paid the court costs.  (Docket Entry No.13-4, page 19).

Plaintiff appealed the dismissal but later moved to strike his briefs, conceding that he had not complied with the procedural requirements for filing suit.  (Docket Entry No.13-5, page 2).  On October 7, 2009, the Tenth Court of Appeals for the State of Texas issued an Order stating its intent to dismiss the appeal without prejudice, which would allow plaintiff to file a new proceeding in state district court in compliance with state law.  (Docket Entry No.13-5, page 2).  On November 10, 2009, the Tenth Court of Appeals affirmed the judgment of the state district court.  (Docket Entry No.13-6, pages 20-22).  Plaintiff filed a petition for review in the Texas Supreme Court, which was dismissed for want of

jurisdiction on September 10, 2010.  (Docket Entry No.13-10, page 34).

Plaintiff claims in the present suit that his state civil rights suit was not frivolous and that it was dismissed on procedural grounds.  Plaintiff claims he was unaware of the requirements for filing such suit due to the restrictions on inmate legal visits under the "no talking without permission rule" and because the Assistant Attorney General failed to notify him of the deficiencies.[5]  (Id., pages 23-24).  Plaintiff claims that because he was unable to research the procedural requirements via a legal visit with a willing inmate, he has been denied access to the courts.  He seeks declaratory and injunctive relief and punitive and nominal damages, (Docket Entries No.1-1, page 30; No.8, page 6; No.12), from defendants in their individual and official capacities on the following grounds:

1. TDCJ Access to Courts Program Senior Administrator Frank Hoke instituted the Rule, which allows prison librarians to adopt and enforce the draconian "no talking without permission" rule, which denied legal assistance to pro se inmate litigants. (Docket Entry No.13, pages 3-4).

2. Senior Law Librarian Robert H. Quada, Jr. adopted the no talking without permission rule, which caused plaintiff to suffer the dismissal of his civil suit; Quada also violated TDCJ PD-22 rule. (Id., pages 4-7).

---

5 Plaintiff alleges that the Assistant Attorney General did not mail copies of the documents to plaintiff as he certified in the certificate of services. (Docket Entry No.1-1, page 10).  The Assistant Attorney General is not a party to this suit.

3.  Assistant Warden Kelly Strong adopted and implemented the "no talking without permission" rule, and violated PD-22. (Id., pages 8-9).

4.  Assistant Warden Tony R. O'Hare, an official policy maker on the Wynne Unit, was a defendant in plaintiff's state civil rights suit. (Docket Entry No.13, page 9). Because O'Hare instigated the job change, which led to the state civil rights suit, he also shares liability for the present suit. (Id., page 11).

5.  Warden Vernon Pittman is responsible for the policy-making decisions of his subordinates, including Assistant Warden Strong, Warden O'Hare, and Librarian Quada. (Id., page 11).

6.  Grievance Investigator Ms. Tyra L. Phillips returned Step 1 Grievance No.201077886 against Mr. Hoke because it was redundant, thereby denying plaintiff the opportunity to challenge his actual injury claim against Administrator Hoke. (Id., pages 11-12).

7.  Step 2 ATC investigators Vickie Barrow and Cheryl Lawson, denied plaintiff's Step 2 Grievances, and thereby failed to correct the problem. (Id., pages 12-14).

## STANDARD OF REVIEW

The complaint in this case is governed by the Prison Litigation Reform Act ("PLRA"). Because plaintiff is a prisoner who proceeds in forma pauperis, the PLRA requires that the district court scrutinize the basis of the complaint, and, if appropriate, dismiss the case at any time without service of process if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. 42 U.S.C.

28 U.S.C. § 1915(e)(2)(B).   In conducting that analysis, a prisoner's *pro se* pleading is reviewed under a less stringent standard that those drafted by an attorney and is entitled to a liberal construction that includes all reasonable inferences, which can be drawn from it.   Haines v. Kerner, 404 U.S. 519 (1972); Alexander v. Ware, 714 F.2d 416, 419 (5th Cir. 1983).

A complaint may be dismissed as frivolous if it lacks any arguable basis in law or fact.   Neitzke v. Williams, 490 U.S. 319, 325 (1989); Talib v. Gilley, 138 F.3d 211, 213 (5th Cir. 1998).   "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges violation of a legal interest which clearly does not exist."   Harris v. Hegmann, 198 F.3d 153, 156 (5th Cir. 1999).

DISCUSSION

Damages

Plaintiff's claims for monetary damages from defendants in their official capacities as employees of state agencies are barred by the Eleventh Amendment. *See* Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002).

Plaintiff's pleadings do not reflect any facts to show that the conduct of any defendant was motivated by evil intent or a criminal indifference that would entitle him to punitive damages. *See* Williams v. Kaufman County, 352 F.3d 994, 1015 (5th Cir. 2003)

8

(noting standard requires "a subjective consciousness of a risk of injury or illegality and a criminal indifference to civil obligations"). Accordingly, plaintiff's request for punitive damages from defendants are DENIED.

Grievances

To the extent that plaintiff complains that Senior Warden Vernon Pittman did not favorably address plaintiff's attempts to informally resolve his complaints about the "no talking without permission rule," and that defendants Assistant Warden Tony O'Hare, Tyra Phillips, Vickie Barrow, and Cheryl Lawson denied his grievances about the same, plaintiff is not entitled to relief. An inmate does not have a liberty interest in having grievance resolved to his satisfaction. Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005).

Moreover, the record does not reflect that plaintiff exhausted his administrative remedies via the grievance process before filing this suit with respect to the denial of courts claim at issue in this case. An inmate must exhaust "such administrative remedies as are available" prior to bringing a civil action. 42 U.S.C. § 1997(e)(a); Booth v. Churner, 532 U.S. 731 (2001). Exhaustion is mandatory. Id. at 739. Although the failure to exhaust is an affirmative defense, which a prisoner is not required to plead or prove in this complaint, Jones v. Bock, 549 U.S. 199, 216 (2007), a reviewing court may raise the issue *sua sponte* or dismiss a

complaint without service on defendants where the face of the pleadings confirm that a prisoner has violated 42 U.S.C. § 1997e(a) by failing to exhaust state remedies before filing suit. *See* id.; Carbe v. Lappin, 492 F.3d 325, 328 (5th Cir. 2007).

Plaintiff's pleadings show that the state district court dismissed his civil rights suit on July 16, 2009; thereafter, plaintiff filed only one grievance, in which he alleged harm from the dismissal of his civil rights suit because of "no talking without permission" rule. On June 16, 2010, almost a year after his state suit was dismissed, plaintiff filed Step 1 Grievance No.2010177886, wherein he complained that Assistant Warden Hoke failed to correct the enforcement of the "no talking" and "no using the restroom" rules. (Docket Entry No.1-2, pages 1-2). Plaintiff alleged in this grievance that he was injured by the "no talking without permission" rule in March 2009, when his civil suit was dismissed on procedural grounds. (Id.). The grievance was returned unprocessed by defendant Phillips, as redundant to No.2010044581.[6] (Id.).

---

6 The day after plaintiff's appeal was dismissed, he filed on November 11, 2009, Step 1 Grievance No.2010044581, wherein he complained that on October 30, 2009, Officer Brown denied him permission to talk to offender Smith in the law library concerning a legal question relevant to his active litigation. (Docket Entry No.1-2, page 7). Plaintiff argued in such grievance that he should be able to confer with another inmate on a legal matter without having to apply for a legal visit. (Id.). Warden Pierce responded on December 20, 2009, that law library attendance is voluntary and that the rules permitted law libraries to enforce the "no talking without permission" rule. (Id., page 8). Pierce found no evidence that plaintiff was being denied access to the courts. (Id.). V. Barrow denied plaintiff's Step 2 Grievance No.2010044581 on January 22, 2010. (Id., pages 5-6).

Thereafter, plaintiff filed Step 1 Grievance No.2010189820 on July 5, 2010, complaining that Grievance No.201077886 addressed a different issue than No.2010044581, *i.e.*, the legal injury plaintiff sustained in state court based on ATC-050.  (<u>Id.</u>, page 9).  Warden O'Hare denied the grievance on the ground that the issue was previously address in grievance No.2010044581.  (<u>Id.</u>, page 10).  Plaintiff's Step 2 Grievance No.2010189820, filed on August 19, 2010, was denied by Cheryl Lawson on the ground that Grievance No.201077885 was properly screened.[7]  (<u>Id.</u>, page 4). Because plaintiff did not complete the two-step grievance process, he failed to exhaust his state remedy with respect to the present issue.

Moreover, plaintiff concedes that he did not exhaust his administrative remedies by filing grievances against Assistant Warden Strong (Docket Entry No.13, page 9), or Warden Tony O'Hare, Senior Warden Vernon Pittman, Vickie Barrow, Tyra Phillips, and Cheryl Lawson "because exhaustion against the first three defendants should suffice."  (Docket Entry No.1-1, page 28).

Because plaintiff did not grieve the dismissal of his state suit on the same grounds alleged in the present suit for more than a year after his state suit was dismissed and such grievance was not processed, plaintiff's claims in the pending suit are subject

---

7 On July 5, 2010, plaintiff filed Step 1 Grievance No.201019820 against Phillips for denying as redundant a grievance that he filed against Hoke. (Docket Entry No.13, page 12). Warden O'Hare denied the grievance on August 8, 2010. (Docket Entry No.1-2, page 10).

to dismissal for failure to exhaust.

### Access to Courts

Even if plaintiff had exhausted his state remedies, he fails to show that his state suit was not frivolous or that he suffered actual harm by the "no talking without permission rule." "It has long been recognized that prisoners generally enjoy the constitutional right of access to the court." Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999). See also Bounds v. Smith, 430 U.S. 817 (1977). The right of access to the court is not unlimited, however, and includes "only a reasonable opportunity to file non-frivolous legal claims challenging [the prisoners'] convictions or conditions of confinement." Jones, 188 F.3d at 325 (citing Lewis v. Casey, 518 U.S. 343, 351 (1996)). Put another way, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." Brewer v. Wilkinson, 3 F.3d 816, 821 (5th Cir. 1993); Lewis, 518 U.S. at 351. "A denial-of-access-to-the-courts claim is not valid if a litigant's position is not prejudiced by the alleged violation." Henthorn v. Swinson, 955 F.2d 351, 354 (5th Cir. 1992). To prevail on an access-to-the-courts claim, plaintiff must show an " 'actual injury'-that is, 'actual prejudice with respect to contemplated or existing litigation, such as the inability to

meet a filing deadline or to present a claim.' " Lewis, 518 U.S. at 349-51 (citation omitted); Oaks v. Wainwright, 430 F.2d 241 (5th Cir. 1970) (noting that to succeed on a denial-of-access-to-courts claim, the plaintiff must show real detriment such as loss of right to commence, prosecute or appeal in a court, or substantial delay in obtaining a judicial determination in a proceeding).

In this case, plaintiff does not allege, and his pleadings do not show, that before he filed his state civil rights suit he filed a request for a legal consultation with another inmate as required by the "no talking without permission rule," and that such request was denied by prison officials. Plaintiff's pleadings show that he attempted to consult with inmate Smith by smuggling notes. His suit was dismissed in July 2009. He did not seek a same session legal visit with another inmate as required by the "no talking without permission" rule for more than a year after his state suit was dismissed. Accordingly, plaintiff's access-to-court claim is subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B).

## PD-22

Plaintiff claims that defendants violated PD-22-the General Rules of Conduct & Disciplinary Action Guidelines for Employees. (Docket Entry No.13). Such claim is also frivolous. The mere failure of prison officials to follow prison rules and regulations does not, without more, give rise to a constitutional violation. Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996).

13

CONCLUSION

Based on the foregoing, the Court enters the following ORDERS:

1.   Plaintiff's complaint is DISMISSED, with prejudice,
     pursuant to 28 U.S.C. § 1915(e)(2)(B).  All claims
     against  all  defendants  are  DISMISSED  with
     prejudice.

2.   All other pending motions, if any, are DENIED.

The Clerk will provide a copy of this order by facsimile transmission, regular mail, or e-mail to the TDCJ - Office of the General Counsel, Capitol Station, P.O. Box 13084, Austin, Texas, 78711, Fax: 512-936-2159; the Inmate Trust Fund, P.O. Box 629, Huntsville, Texas 77342-0629, Fax: 936-437-4793; and the District Clerk for the Eastern District of Texas, 211 West Ferguson, Tyler, Texas 75702, Attention: Manager of the Three-strikes List.

SIGNED at Houston, Texas, on _June 27_____, 2011.


                    EWING WERLEIN, JR.
                    UNITED STATES DISTRICT JUDGE